## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**NATH C. DOUGHTIE,**

     Plaintiff                         CASE NO.

v

**RON DESANTIS**, in his official capacity as
Governor of the State of Florida,
**ASHLEY MOODY**, in her official capacity
as Attorney General of the State of Florida,
**CORD BYRD**, in his official capacity as
Secretary of State of the State of Florida
and the
**CITY OF GAINESVILLE**, a Florida
municipal corporation,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT,  INJUNCTIVE RELIEF AND DAMAGES

**DOUGHTIE** brings this suit pursuant to 42 U.S.C. §1983, seeking declaratory and injunctive relief against the Special Law of the Florida Legislature (House Bill 1645) amending chapter 12760, Laws of Florida (1927) (as amended by chapter 90-394, Laws of Florida), creating the "Gainesville Regional Utilities Authority," because the Special Law is unconstitutional under the First and Fourteenth Amendments to the United States Constitution.

-1-

The Special Law is hereinafter referred to as "Special Law" or "the Special Law." The Gainesville Regional Utilities Authority is hereinafter referred to as "the Authority" or "Authority." The Gainesville utility system is hereinafter referred to as "GRU."

## JURISDICTION

1. This suit is brought pursuant to 42 U.S.C. §1983:

   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2. This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3. The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4. The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

5. This Complaint seeks declaratory and injunctive relief to prevent

violations of the **DOUGHTIE**'s rights, privileges, and immunities under the Constitution of the United States and Title 42 U.S.C. §§1983 and 1988, specifically seeking redress for the denial under color of state statute of a right to vote secured by the Constitution and laws of the United States.

6. The First and Fourteenth Amendments to the United States Constitution protect **DOUGHTIE'S** right to vote created by Article VIII §2(b) Florida Constitution against unlawful denial and abridgement by the State.

7. This action seeks a judicial determination of issues, rights and liabilities embroiled in an actual and present controversy between the parties involving the constitutionality of the Special Law and acts of the **DEFENDANTS** to implement it.

8. There are substantial bona fide doubts, disputes, and questions to resolve concerning the constitutionality of the Special Law and of **DEFENDANTS**' actions to implement it taken under color and authority of state law in violation of **DOUGHTIE'**s Article VIII §2(b) Florida Constitution right to vote secured by the First and Fourteenth Amendments to the United States Constitution.

**VENUE**

9. Venue is proper in the Northern District of Florida, Gainesville Division, because the plaintiff, **DOUGHTIE,** resides in the Gainesville Division. The Special Law and policies complained of affect **DOUGHTIE** and all citizens and electors of the **CITY OF**

**GAINESVILLE**. Defendant the **CITY OF GAINESVILLE** is located in the Gainesville Division. All other defendants are located in Leon County, Florida.

## PARTIES

10. Plaintiff **NATH C. DOUGHTIE** is a resident, homestead owner and elector of the **CITY OF GAINESVILLE** and a paying consumer of services provided by the **CITY OF GAINESVILLE'S** integrated municipal utility system known as GRU (Gainesville Regional Utility).

11. Prior to July 1, 2023, the effective date of the Special Law, the elective city commission of the **CITY OF GAINESVILLE** was the elective municipal legislative body that made all municipal legislative decisions pertaining to governance of GRU including but not limited to adopting rate ordinances, adopting ordinances to sell financing bonds, and adopting collective bargaining ordinances pertaining to the employment of GRU employees

12. The city commission of the **CITY OF GAINESVILLE** has exercised the powers stated in the foregoing paragraph in regard to the legislative governance of GRU and its predecessors since as early as 1912.

13. **DOUGHTIE** has been a resident, taxpayer and elector of the **CITY OF GAINESVILLE** for more than 50 years.

14. **DOUGHTIE** has regularly voted in elections to choose members of the Gainesville City Commission, intends to continue doing so, and considers legislative matters pertaining to the ownership and governance of GRU when choosing among candidates.

15. **DOUGHTIE** is a retired circuit judge in the eighth judicial circuit of Florida and before that was county judge in and for Alachua County, Florida.

16. Defendant **RON DESANTIS** is the Governor of Florida and as governor of Florida is hereinafter referred to as "**DESANTIS**."

17. **DESANTIS** is sued in his official capacity as Governor of Florida.

18. **DESANTIS** signed the Special Law as the final step in the enactment process.

19. Pursuant to Article IV §1 Florida Constitution **DESANTIS** has this duty: "The governor shall take care that the laws be faithfully executed."

20. The Special Law designates **DESANTIS** as the exclusive governmental official empowered to issue public notices soliciting citizen nominations for members of the Authority, to appoint the members of and to fill vacancies on the Authority, and to remove members of the Authority.

21. The Authority is not an elective municipal legislative body.

22. The Special Law deprived the elected city commission of the **CITY OF GAINESVILLE** of all municipal legislative, governing, and managing powers pertaining to GRU.

23. The Special Law unlawfully transferred the powers referred to in the preceding paragraph to **DESANTIS** and the unelective Authority.

24. As of July 1, 2023, **DESANTIS** and the unelective Authority serve in the place of the elective legislative governing body previously occupied by the elected city commission of the **CITY OF GAINESVILLE.**

25. Defendant **ASHLEY MOODY** is the Attorney General of the State of Florida and is sued in her official capacity.

26. The Attorney General is Florida's chief legal officer and is vested with broad authority to act in the public interest and, when she deems it necessary, to defend statutes against constitutional attack.

27. The Attorney General has the statutory duty to "appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, [in the] courts of this state or in any courts of any other state or of the United States." §§16.01(4), (5), Fla. Stat.

28. The Attorney General also has common law authority to protect the public interest through litigation.

29. Defendant **CORD BYRD** is the Secretary of State of the State of Florida and is sued in his official capacity.

30. The Secretary of State is responsible for custody of the original statutes and records of the State of Florida. §§ 20.01 and 15.01, Fla. Stat.

31. The Secretary is the official responsible for striking, expunging, or removing any statute or law that is invalidated.

32. Defendant **CITY OF GAINESVILLE** is a Florida municipal corporation, organized and operating under the constitution and laws of the State of Florida.

33. The elected city commission of the **CITY OF GAINESVILLE** is the only elective municipal legislative body of the **CITY OF GAINESVILLE**.

-6-

34. The Special Law creates the Authority as a unit of the government of the **CITY OF GAINESVILLE**.

35. The Special Law creates the Authority as an appointed body and not as an elective body.

36. The Special Law makes the unelected Authority the sole municipal legislative body governing GRU.

37. The Special Law does not create the Authority as a special district or unit of state or county government.

38. The Authority is a unit of the **CITY OF GAINESVILLE** and does not have separate legal existence.

39. The Special Law imposes upon the **CITY OF GAINESVILLE** specific duties to implement its provisions.

40. The Special Law directs the **CITY OF GAINESVILLE** to; "perform all acts necessary and proper to effectuate an orderly transition of the governance, operation, management, and control of all utility systems, properties, and assets held in the possession of GRU as of January 1, 2023, to the Authority, including, but not limited to, the creation of such instruments as are necessary for the Authority to function in accordance with this article."

41. The Special Law does not create the Authority as an "arm" of the government of the State of Florida but only as a unit of the municipal government of the **CITY OF GAINESVILLE.**

42. The Special Law provides the Authority no power to sue or be sued, apart from bringing bond validation and eminent domain actions.

43. The **CITY OF GAINESVILLE** is properly sued as a defendant.

44. This action against the **CITY OF GAINESVILLE** is an action against the Authority

45. The Special Law unlawfully eliminated and denied **DOUGHTIE'**s Article VIII §2(b) Florida Constitution right to vote to elect an elective municipal legislative body of the **CITY OF GAINESVILLE** to make all municipal legislative and governing decisions pertaining to GRU.

## COLOR OF STATE LAW

46. All named **DEFENDANTS** are public officials, officials of state agencies or are a Florida municipal government

47. All named **DEFENDANTS** are acting under color of state law.

48. The Special Law and actions of the **DEFENDANTS** to implement it have violated **DOUGHTIE'S** Article VIII §2(b) Florida Constitution right to vote secured against unlawful denial or abridgement by the First and Fourteenth Amendments to the United States Constitution.

## GAINESVILLE MUNICIPAL UTILITY SYSTEM

49. The **CITY OF GAINESVILLE** has wholly owned and operated a propriety municipal utility system to provide utility services to its residents and others since as early as 1912.

50. The **CITY OF GAINESVILLE**'s propriety municipal utility system has been known as GRU for several decades.

51. The Special Law continues to use the GRU designation to describe the system.

52. Article VIII §2( c) Florida Constitution provides: "exercise of

extra-territorial powers by municipalities shall be as provided by general or special law."

53.   The **CITY OF GAINESVILLE** has been authorized by law to deliver GRU municipal utility services to consumers located outside of the limits of the **CITY OF GAINESVILLE.**

54.   GRU is an integrated utility system providing electricity, water, sewage removal, natural gas, and internet services both within and outside the municipal boundaries of the city.

## THE SPECIAL LAW

55.   On May 4, 2023, the Florida Legislature enacted HB 1645, the Special Law that is challenged herein, entitled:

An act relating to the CITY OF GAINESVILLE, Alachua County; amending chapter 12760, Laws of Florida (1927), as amended by chapter 90-394, Laws of Florida, relating to the City's charter; repealing section 3.06 of the charter, relating to the general manager for utilities of Gainesville Regional Utilities; creating the Gainesville Regional Utilities Authority and establishing it as the governing board of Gainesville Regional Utilities; providing an effective date.

56.   A copy of the Special Law is attached as Exhibit "1" to this Complaint.

57.   Defendant **DESANTIS** signed the Special Law on June 28, 2023 and the Special Law became effective on July 1, 2023.

58.   Relevant provisions of the Special Law state;

7.01 Establishment.—
There is created a regional utilities authority to be known as the "Gainesville Regional Utilities Authority" ("Authority").Gainesville Regional Utilities shall be governed by the Authority upon installation of the Authority's members

pursuant
to this article. The Authority shall operate as a unit of city government and, except as otherwise provided in this article, shall be free from direction and control of the Gainesville City Commission. The Authority is created for the express purpose of managing, operating, controlling, and otherwise having broad authority with respect to the utilities owned by the CITY OF GAINESVILLE.
.....
7.03 Powers and duties.-
 (1) The Authority shall have the following powers and duties, in addition to the powers and duties otherwise conferred by this article:
(a) To manage, operate, and control the utilities, and to do all things necessary to effectuate an orderly transition of the management, operation, and control of the utilities from the City to the Authority, consistent with this article.
(b) To establish and amend the rates, fees, assessments, charges, rules, regulations, and policies governing the sale and use of services provided through the utilities. ( c) To acquire real or personal property and to construct such projects as necessary to operate, maintain, enlarge, extend, preserve, and promote the utility systems in a manner that will ensure the economic, responsible, safe, and efficient provision of utility services, provided that title to all such property is vested in the City.
(d) To exercise the power of eminent domain pursuant to chapter 166, Florida Statutes, and to use utility funds to appropriate or acquire property, excluding federal or state property, for the purpose of obtaining, constructing, and maintaining utility facilities, provided that title to all such property is vested in the City.
(e) To authorize the issuance of revenue bonds and other evidences of indebtedness of the City, secured by the revenues and other pledged funds and accounts of the utility system, pursuant to Florida law. Upon resolution of the Authority establishing the authorized form, terms, and purpose of such bonds, for the purpose of financing or refinancing utility system projects, and to exercise all powers in connection with the authorization of the issuance, and sale of such bonds by the City as conferred upon municipalities by part II of chapter 166, Florida Statutes, other applicable state laws, and section 103 of the Internal Revenue Code of 1986. Such bonds may be validated in accordance with chapter 75, Florida Statutes. The Authority may not authorize the issuance of general obligation bonds. Such bonds and other forms of indebtedness of the City shall be executed and attested by the officers, employees, or agents of the City,

including the chief executive officer/general manager (CEO/GM) or chief financial officer of the utility system, the Authority has so designated as agents of the City. The Authority may enter into hedging agreements or options for the purpose of moderating interest rates on existing and proposed indebtedness or price fluctuations of fuel or other commodities, including agreements for the future delivery thereof, or any combinations thereof.

(f) To dispose of utility system assets only to the extent and under the conditions that the City Commission may dispose of such assets pursuant to section 5.04 of Article V.

(g) To prepare and submit to the City Commission, at least 3 months before the start of the City's fiscal year, an annual budget for all Authority and GRU operations, including the amount of any transfer to the City. The term of the budget shall coincide with the City's fiscal year. The amount of any transfer is subject to the limitations specified in section 7.11.

(h) To appoint and remove a CEO/GM as provided in this article.

(I) To recommend, by resolution to the City Commission, the acquisition and operation of a utility system not owned or operated by GRU as of the date of transfer of governing authority to the Authority.

7.04 Authority members.—

(1) There shall be five members of the Authority appointed by the Governor. Each member shall be a person of recognized ability and good business judgment as identified by the Governor who is expected to perform his or her official duties in the best interests of GRU and its customers. Appointments shall be made as follows:

(a) One member shall be a residential customer with substantial knowledge of GRU, its operations, and its history.

(b) One member shall be a private, nongovernment customer consuming at least 10,000 kilowatt hours per month of electric usage during each of the previous 12 months. This member may be the owner or representative of the customer.

( c) Three members shall be competent and knowledgeable in one or more specific fields substantially related to the duties and functions of the Authority, including, but not limited to, law, economics, accounting, engineering, finance, or energy.

(2) All members of the Authority shall:

(a) Maintain primary residence within the electric service territory of GRU's electric utility system.

(b) Receive GRU electric utility system service at all times during the term of

-11-

appointment.
( c) Not have been convicted of a felony as defined by general law.
(d) Be a qualified elector of the City, except that a minimum of one member must be a resident of the unincorporated area of the county or a municipality in the county other than the CITY OF GAINESVILLE.
(3) (Remainder omitted.)

7.05 Member nominations and terms.—
(1) The Governor shall issue a public notice soliciting citizen nominations for Authority members within 120 days after the effective date of this article. The nomination solicitation period shall remain open for at least 30 days after the date of the public notice.
(2) The Governor shall appoint initial members to the Authority from among the nominees within 60 days after the close of the nomination solicitation period. (Remainder omitted.)

7.08 Removal and suspension of members.—
(1) A member may be removed or suspended from office by the Governor in accordance with s. 112.501, Florida Statutes. In addition to the grounds for removal set forth therein, a member may be removed by the Governor for failure to maintain the qualifications specified in section 7.04.
(Remainder omitted.)

7.10 General provisions.—
(1) The City and the Authority shall perform all acts necessary and proper to effectuate an orderly transition of the governance, operation, management, and control of all utility systems, properties, and assets held in the possession of GRU as of January 1, 2023, to the Authority, including, but not limited to, the creation of such instruments as are necessary for the Authority to function in accordance with this article. Notwithstanding the reorganization of the governance structure of the management of the utility system as provided in this section, the utility system shall continue to be operated as a single enterprise and there shall be no change to the ownership of the utility system.

7.09 Management and personnel.—
(1) A chief executive officer/general manager (CEO/GM) shall direct and administer all utility functions, subject to the rules and resolutions of the Authority. The CEO/GM shall serve at the pleasure of the Authority.

Appointment or removal of the CEO/GM shall be by majority vote of the Authority. Until such time as the Authority appoints a CEO/GM, the sitting general manager of GRU shall serve as the CEO/GM. A sitting member of the Authority may not be selected as the CEO/GM.
(Remainder omitted.)

7.11 Limitation on government services contribution.—
(1) MAXIMUM CAP ON GSC.—For any fiscal year, the GSC may not exceed aggregate utility system net revenues less flow of funds.
(2) DEBT SERVICE AND AVOIDANCE.—Any remaining funds, after deductions for flow of funds and GSC, shall be dedicated to additional debt service or utilized as equity in future capital projects.

59. Article VIII §2(b) Florida Constitution provides:
(b) POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. *Each municipal legislative body shall be elective*. (Italics added.)

60. Article VIII §2(b) Florida Constitution creates **DOUGHTIE'S** right to vote for members of a Florida municipal elective legislative body to govern GRU and all departments of the government of the **CITY OF GAINESVILLE**.

61. Prior to July 1, 2023, **DOUGHTIE** and the electors of the **CITY OF GAINESVILLE** elected all members of the city commission of the **CITY OF GAINESVILLE** as the elective municipal legislative body governing GRU and all other departments of the government of the **CITY OF GAINESVILLE**.

62. Prior to July1, 2023, the electors of **CITY OF GAINESVILLE**

exercised exclusive municipal legislative control of GRU and all other departments of the **CITY OF GAINESVILLE** through the election of the members of the city commission.

63. The Special Law deprived the elected city commission of the **CITY OF GAINESVILLE** of all legislative power and all other power pertaining to the governance of GRU.

64. As of July 1, 2023 the **CITY OF GAINESVILLE** owns only bare legal title to GRU and its assets.

65. The Special Law retains the **CITY OF GAINESVILLE** as the sole obligor to pay GRU's debts and liabilities.

66. The Special Law unlawfully eliminated and denied the Article VIII §2(b) Florida Constitution right of **DOUGHTIE** and the electors of the **CITY OF GAINESVILLE** to elect the municipal legislative body that makes municipal legislative decisions pertaining to the governance of GRU.

67. The Special Law unlawfully created the unelected Authority as the exclusive municipal legislative body to make municipal legislative decisions pertaining to the governance of GRU.

**ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF**

68. Prior to July l, 2023 the elected city commission of the **CITY OF GAINESVILLE** was the elected legislative body that made all municipal legislative decisions pertaining to the governance, financing, operation and management of GRU.

69. GRU was always and remains a unit of the government of the **CITY**

**OF GAINESVILLE**.

70. The Special Law and **DEFENDANTS'** actions to implement it unlawfully eliminated and denied **DOUGHTIE'S** Article VIII §2(b) Florida Constitution right to vote for the municipal legislative body governing GRU secured by the First and Fourteenth Amendments to the United States Constitution.

71. The Special Law and **DEFENDANTS'** actions to implement it unlawfully eliminated **DOUGHTIE'**s prior right to seek redress of grievances from the elected city commission of the **CITY OF GAINESVILLE** pertaining to the governance of GRU.

72. Unless the Special Law is invalidated and the actions, policies and practices of **DEFENDANTS** are enjoined by this Court, **DOUGHTIE** will suffer the continuing loss of the Article VIII §2(b) Florida Constitution right to vote to elect the members of the municipal legislative body that exercises legislative powers pertaining to the governance of GRU.

73. Unless the Special Law is invalidated and the actions, policies and practices of **DEFENDANTS** are enjoined by this Court, **DOUGHTIE** will suffer the continuing loss of the constitutional right to petition an elective municipal legislative body for redress of grievances pertaining to the governance of GRU.

74. **DOUGHTIE** has suffered irreparable injury and continues to suffer irreparable injury as a result of the Special Law and the **DEFENDANTS'** actions to implement it.

-15-

75. Apart from immediate and continuing injunctive relief, **DOUGHTIE** has no plain, adequate, or complete remedy to protect his constitutional rights and to redress the wrongs and illegal acts complained of.

76. Unlawful deprivation of rights secured by the First and Fourteenth Amendments to the United States Constitution is irreparable injury for purposes of injunctive relief.

77. Damages are both inadequate and unascertainable to redress the unlawful denial of **DOUGHTIE**'s Article VIII §2(b) Florida Constitution right to vote to elect a municipal legislative body to govern GRU and denial of his Article I §5 Florida Constitution right to petition an elective government for redress of grievances secured by the First and Fourteenth Amendments to the United States Constitution.

78. The Special Law is opposed and contrary to the public interest of **DOUGHTIE** and all electors of the **CITY OF GAINESVILLE**.

79. The public interest would be advanced by the granting of injunctive relief.

80. A permanent injunction will preserve **DOUGHTIE'S** civil rights and may minimize the need to award extensive compensatory damages.

### DAMAGES AND ATTORNEY'S FEES

81. The Special Law and **DEFENDANTS'** actions to implement it have deprived **DOUGHTIE** of rights protected by the First and Fourteenth Amendments to the United States Constitution.

82. The Special Law and **DEFENDANTS'** actions to implement it have caused **DOUGHTIE** to suffer damages that he will continue to suffer if

not remedied.

83.    **DOUGHTIE**'s damages arise from the unlawful deprivation of the Article VIII §2(b) Florida Constitution right to vote to elect a municipal legislative body to govern GRU secured by the First and Fourteenth Amendments to the United States constitution.

84.    **DOUGHTIE** has retained Joseph W. Little to represent him in this action and has agreed to pay him  such a reasonable fee as this Court may award pursuant to 42 U.S.C. §1988.

## COUNT I

## THE SPECIAL LAW VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY UNLAWFULLY ELIMINATING AND DENYING DOUGHTIE'S ARTICLE VIII §2(b) FLORIDA CONSTITUTION RIGHT TO VOTE TO ELECT MEMBERS OF THE  MUNICIPAL LEGISLATIVE BODY THAT GOVERNS GRU.

85.    **DOUGHTIE**  re-alleges the facts set forth in paragraphs 1 through 84 and incorporates those facts into this Count by reference.

86.    This is an action for declaratory and supplemental relief pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

87.    This is an action to invalidate the Special Law, which was enacted in the 2023 session of the Florida Legislature.

88.    The Special Law unlawfully eliminated and denied **DOUGHTIE'S** Article VIII §2(b) Florida Constitution right to vote for the members of the municipal legislative body that legislates for, governs, operates and

manages GRU, a unit of the government of the **CITY OF GAINESVILLE**.

89.   In *Baker v. Carr*, 369 U.S. 186, 208, 82 S. Ct. 691, 705, 7 L. Ed. 2d 663 (1962),   a case involving a challenge to the apportionment of the legislature of the State  of Tennessee, the United States Supreme Court opined:

*A citizen's right to a vote free of arbitrary impairment by state action has been judicially recognized as a right secured by the Constitution*, when such impairment resulted from dilution by a false tally, cf. *United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; or by a refusal to count votes from arbitrarily selected precincts, cf. *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355, or by a stuffing of the ballot box, cf. *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717; *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. (Italics added.)

90.   In *Reynolds v. Sims*, 377 U.S. 533, 554-55, 84 S. Ct. 1362, 1377-78, 12 L. Ed. 2d 506 (1964), a case involving the apportionment of the legislature of the State  of Alabama, the United States Supreme Court opined:

   *Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as  well as in federal elections*. A consistent line of decisions by this Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear. It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote, *Ex parte Yarbrough*, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274, and to have their votes counted, *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355. In *Mosley* the Court stated that it is 'as equally unquestionable that the right to have one's vote counted is as open to protection * * * as the right to put a ballot in a box.' 238 U.S., at 386, 35 S.Ct., at 905. The right to vote

can neither be denied outright, *Guinn v. United States*, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340, *Lane v. Wilson*, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281, nor destroyed by alteration of ballots, see *United States v. Classic*, 313 U.S. 299, 315, 61 S.Ct. 1031, 1037, 85 L.Ed. 1368, nor diluted by ballot-box stuffing *Ex parte Siebold*, 100 U.S. 371, 25 L.Ed. 717, *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. (Italics added.)

91. In *Wesberry v. Sanders*, 84 S. Ct. 526, 535 (1964), the United States Supreme Court held that the right to vote for members of Congress guaranteed by Article I §2 of the United States Constitution is a constitutionally protected right:

> It is in the light of such history that we must construe Art. I, s 2, of the Constitution, which, carrying out the ideas of Madison and those of like views, provides that Representatives shall be chosen 'by the People of the several States' and shall be 'apportioned among the several States * * * according to their respective Numbers.' It is not surprising that our Court has held that this Article gives persons qualified to vote a constitutional right to vote and to have their votes counted. *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; *Ex parte Yarbrough,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274. Not only can this right to vote not be denied outright, it cannot, consistently with Article I, be destroyed by alteration of ballots, see *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368, or diluted by stuffing of the ballot box, see *United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341. No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. Our Constitution leaves no room for classification of people in a way that unnecessarily abridges this right.

92. In a *Burdick v. Takushi*, 504 U.S. 428, 441, 112 S. Ct. 2059, 2067, 119 L. Ed. 2d 245 (1992), the Supreme Court upheld a voting system in the state of Hawaii that had no provision for write-in voting. Nevertheless, the Court acknowledged that *Wesberry* limits a state's power to abridge the right to vote, opining:

> No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 534–535, 11 L.Ed.2d 481 (1964). But the right to vote is the right to participate in an electoral process that is necessarily structured to maintain the integrity of the democratic system. *Anderson, supra*, 460 U.S., at 788, 103 S.Ct., at 1569–1570; *Storer*, 415 U.S., at 730, 94 S.Ct., at 1279. We think that Hawaii's prohibition on write-in voting, considered as part of an electoral scheme that provides constitutionally sufficient ballot access, does not impose an unconstitutional burden upon the First and Fourteenth Amendment rights of the State's voters.

93. Unlike the statute in *Burdick*, the Special Law does not merely omit a particular means of voting preferred by the complainant from an array of readily available permissible voting alternatives.

94. The Special Law entirely eliminated and denied **DOUGHTIE'S** Florida Article VIII §2(b) Florida Constitution right to vote for members of the municipal legislative body that legislates for and governs GRU.

95. Exercising the Article VIII §2(b) Florida Constitution right to vote for the election of members of a Florida municipal legislative body is an expression of core political speech.

96. The Florida legislature and Florida governor have no lawful power to

eliminate, deny, or abridge the Article VIII§2(b) Florida Constitution right of **DOUGHTIE** and the electorate of **CITY OF GAINESVILLE** to elect the members of a Florida municipal legislative body governing GRU.

97.    The Florida legislature and Florida governor will have no power to eliminate, deny, or abridge  the Article VIII §2(b) Florida Constitution right of the electorate of a Florida municipality to elect the members of a Florida elective municipal legislative body unless and until the electorate of the State of Florida votes to amend the Florida constitution to remove that constitutional right to vote.

98.    The electorate of the State of Florida has not voted to amend the Florida Constitution to remove the constitutional right of the electorate of a Florida municipality to elect members of  an elective municipal legislative body.

99.    The Florida legislature does not possess unilateral power to amend the Florida Constitution or to enact statutes that are in conflict with it.

100.    The Special Law unlawfully eliminated all power of the elective legislative body of the **CITY OF GAINESVILLE** to make the municipal legislative decisions for and to govern GRU.

101.    The Special Law eliminated the power of the elected city commission of the **CITY OF  GAINESVILLE** to appoint the manager of GRU to serve at the pleasure of the city commission.

102.    The Special Law eliminated the power of the elected city commission of the **CITY OF  GAINESVILLE** to direct the manager of GRU to

operate GRU within the ordinances and directives of the elected city commission.

103. The Special Law transferred all powers to govern GRU from the elective legislative body of the **CITY OF  GAINESVILLE**  to **DESANTIS** and the unelective Authority.

104. Under the constitution of the State of Florida, a Florida municipality has the power to own and operate a municipal utility system as a proprietary function.

105. Property owned and operated as a proprietary function by a Florida municipality and its earnings are assets of the people of the municipality.

106. The propriety assets and earnings of GRU are owned by the people of Gainesville in the name of the **CITY OF GAINESVILLE** for the benefit of the residents and electors of the municipality.

107. Under the constitution and laws of the State of Florida a Florida municipality has the power to earn a reasonable income on the ownership and operation of a propriety municipal utility system.

108. Under the constitution and laws of the State of Florida a Florida municipality has the authority to use a reasonable amount of the net earnings of a proprietary municipal utility system to provide general governmental services for city residents and all others who use the municipality's facilities.

109. The **CITY OF GAINESVILLE** annually earns a reasonable income of several tens of millions of dollars from the operation of GRU.

110. The assets and earnings of GRU are not owned by State of Florida

111. The State of Florida has no power to appropriate Florida municipal proprietary property and earnings from the operation of a municipal proprietary function without a taking.

112. The elected city commission of the **CITY OF GAINESVILLE** historically employed portions of GRU's earnings to provide municipal services, including but not limited to, parks and recreation, health and safety programs, environmental protection, streets, roads and street-lighting, and housing for poor, for the benefit of the residents of and visitors to the **CITY OF GAINESVILLE**.

113. Non-residents of the **CITY OF GAINESVILLE** including those who are employees of the University of Florida, of the Gainesville facilities of Santa Fe College, of the several hospitals in the city, and visitors to the city also make use of the municipal services provided by the **CITY OF GAINESVILLE**.

114. The Special Law eliminated all authority of the elected city commission of the **CITY OF GAINESVILLE** to determine the amount of GRU's net earnings to transfer to the general government of the city to be employed to provide municipal services.

115. The Special Law transferred all municipal legislative power and all other powers to govern GRU to **DESANTIS** and the unelective Authority.

116. There are more than 400 municipal governments in Florida.

117. Article VIII §2 Florida Constitution provides:

SECTION 2. Municipalities.—

(a) ESTABLISHMENT. Municipalities may be established or abolished and their charters amended pursuant to general or special law. When any municipality is abolished, provision shall be made for the protection of its creditors.

(b) POWERS. Municipalities shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services, and may exercise any power for municipal purposes except as otherwise provided by law. Each municipal legislative body shall be elective.

( c) ANNEXATION.

Municipal annexation of unincorporated territory, merger of municipalities, and exercise of extra-territorial powers by municipalities shall be as provided by general or special law.

118. All Florida municipalities are vested with the powers granted by Article VIII §(2) Florida Constitution.

119. The Special Law applies only to the **CITY OF GAINESVILLE.**

120. The Special Law does not affect the powers of the remaining 400 plus Florida municipalities.

121. The legislative sponsor of the Special Law is not a resident and elector of the **CITY OF GAINESVILLE** but lives in Alachua County.

122. The legislative sponsor of the Special Law had a partisan political purpose to enact the Special Law.

123. The partisan political purpose of the legislative sponsor of the Special Law was to eliminates the Article VIII §2(b) Florida Constitution right to vote for a municipal legislative body only in the **CITY OF GAINESVILLE**.

-24-

124. The legislative sponsor of the Special Law did so to advance the partisan desires and purposes of  non-residents of the **CITY OF GAINESVILLE**.

125. A primary partisan political purpose of legislative sponsor of the Special Law was to deprive **DOUGHTIE** and all electors of the **CITY OF GAINESVILLE** of the Article VIII §2(b) Florida Constitution right to elect the members of the municipal legislative body governing GRU.

126. A primary partisan political purpose of the legislative sponsor of the Special Law was to remove the power of the elected legislative body of the **CITY OF GAINESVILLE** to set utility rates and policies for non-**CITY OF GAINESVILLE** consumers of GRU's services.

127. A primary partisan political purpose of the legislative sponsor of the Special Law was to eliminate the power of the elective legislative body of the  **CITY OF GAINESVILLE** to determine the portion, if any, of GRU's earnings available to provide municipal services to residents of and visitors to the **CITY OF GAINESVILLE**.

128. Eliminating or reducing the amount of GRU's earnings employed to provide municipal services within the **CITY OF GAINESVILLE** will result in the reduction of the level of municipal services provided to residents of and visitors to the city, or increases in the amount of ad valorem taxes paid by owners of property in the City, especially residential property owners, or requiring users of municipal services to pay fees for services, or all of the above.

129. Eliminating or reducing the amount of GRU's earnings employed to provide municipal services within the **CITY OF GAINESVILLE** will have disproportionate negative consequences for lower income residents and residents of the historic black neighborhoods of the city.

130. In Florida setting utility rates is a legislative function.

131. In Florida adopting ordinances including ordinances to issue municipal bonds is a legislative function.

132. In Florida adopting ordinances to exercise extra-territorial powers is a legislative function.

133. Article VIII, §2(b), Florida Constitution provides "Each municipal legislative body shall be elective."

134. The Special Law created the Authority as the unelective legislative body to govern GRU.

135. The Special Law mandates that none of the appointed members of the Authority be elected.

136. The Special Law mandates that at least one member of the unelected appointed governing board of the Authority be a non-resident and non-elector of the **CITY OF GAINESVILLE**.

137. The Special Law unlawfully authorizes the unelected members of the Authority to exercise all municipal legislative power and governing authority pertaining to GRU in violation of Article VIII §2(b), Florida Constitution.

138. The Special Law does not provide **DOUGHTIE** and the electorate of the **CITY OF GAINESVILLE** a right to vote to elect the members of

the Authority.

139. The Special Law unlawfully denies **DOUGHTIE**'s Article VIII §2(b) Florida Constitution right to vote to elect members of a legislative body of the **CITY OF GAINESVILLE** that governs GRU.

140. The constitution of the State of Florida is a limitation on the powers of the state government including the powers of the legislature and governor of the State.

141. Every provision of the constitution of the State of Florida constitutes a limitation on the powers of the government of the State or of entities thereof.

142. When the constitution of the State of Florida grants an entity specific powers it precludes the entity's exercise of other powers.

143. The legislature of the state of Florida does not possess the unilateral power to deprive **DOUGHTIE** of the Article VIII §2(b) Florida Constitution right to vote.

144. Article II §3 Florida Constitution provides:
SECTION 3. Branches of government.—The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

145. **DESANTIS** is an executive official of the State of Florida.

146. **DESANTIS** is not a legislative official of the State of Florida.

147. **DESANTIS** has no legislative power or authority outside the limitations of Article II §3 Florida Constitution.

148. **DESANTIS** has no constitutional power or authority to take over the

governance of a Florida municipality.

149. The Florida legislature has no constitutional power to authorize **DESANTIS** and the unelected Authority to exercise the municipal legislative powers of the **CITY OF GAINESVILLE** to govern GRU.

150. The Florida legislature has no constitutional power to authorize **DESANTIS** and the unelected Authority to be the municipal legislative body governing GRU.

151. **DESANTIS** can have no legislative power or authority pertaining to governance of municipalities beyond his specific and limited constitutional power to suspend and replace elected municipal officers indicted for crime.

152. **DOUGHTIE** 's Article VIII §2(b) Florida Constitution right to vote for the members of a legislative body of the **CITY OF GAINESVILLE** is an expression of political speech secured by the First and Fourteenth Amendments of the United States Constitution.

153. The Special Law creates the Authority as the municipal unelective legislative body of the **CITY OF GAINESVILLE** to govern GRU.

154. The Special Law as implemented by the **DEFENDANTS** does not provide **DOUGHTIE** and the electorate of the **CITY OF GAINESVILLE** a right to vote for the members of the Authority.

155. The First and Fourteenth Amendments to the United States Constitution secure **DOUGHTIE'S** Article VIII §2(b) Florida Constitution right to elect the municipal legislative body that governs GRU against unlawful denial or abridgement.

156.   For all reasons stated herein the Special Law is unconstitutional, invalid and void *ab initio*.

WHEREFORE, **DOUGHTIE** prays for a declaratory judgment and for an injunction and supplemental relief awarding the following:

A.  This Court take jurisdiction over the parties and this cause,

B.  A declaration that the Special Law is unconstitutional and invalid because it unlawfully eliminates and denies **DOUGHTIE**'s Article VIII §2(b) Florida Constitution right to vote to elect the members of the municipal legislative body that governs GRU in violation of the First and Fourteenth Amendments to the United States Constitution,

C.   A declaration that the Special Law is unconstitutional and invalid because it unlawfully denies **DOUGHTIE**'s Article VIII §2(b) Florida Constitution right to vote to elect the members of the unelective Authority the Special Law creates to be the municipal legislative body that governs GRU in violation of the First and Fourteenth Amendments to the United States Constitution,

D.  A preliminary and permanent injunction enjoining **CORD  BYRD** in his official capacity as Secretary of State of Florida to expunge and remove the Special Law from the official records of the State of Florida, and

D.  A preliminary and permanent injunction enjoining the **DEFENDANTS** and all agents and persons acting under their direction and control from administering, executing, and enforcing or attempting to enforce the Special Law against **DOUGHTIE** and the electorate of the **CITY OF GAINESVILLE**.

E.      Costs, fees and such other and further relief to **DOUGHTIE** as the Court deems just.

                              /S/ Joseph W. Little
                              JOSEPH W. LITTLE
                              Florida Bar No. 196749
                              3731 N.W. 13th Place
                              Gainesville, Florida 32605
                              (352) 273-0660
                              littlegnv@gmail.com
                              Attorney for Plaintiff